JOHN M. CARSON AND JEAN CARSON, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 45191-85.    Filed May 24, 1989.

*Richard S. Calone,* for the petitioners.
*Debra A. Bowe,* for the respondent.

NIMS, *Chief Judge:* Respondent determined the following deficiencies and additions to tax:

| | | Additions to tax | |
| Year | Deficiency | Sec. 6653(a)[1] | Sec. 6661 |
| 1981 | $10,317.45 | $516 | - - - |
| 1982 | 6,151.04 | 308 | $615 |
| 1983 | 6,533.60 | 327 | 653 |

Before trial, petitioners conceded the 1981 deficiency and respondent conceded all of the determined additions to tax under sections 6653(a) and 6661. Respondent filed a motion to amend the pleadings after trial, wherein he moved, pursuant to section 6214(a), that the deficiency for the taxable year 1983 be increased from $6,533.60 to $6,962. Petitioners filed no objection and we granted respondent's motion on October 14, 1988.

---

[1]Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in question. All Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issue for decision is whether Jean Carson, as a grantor, retained the power to sprinkle any portion or all of the trust income between the beneficiaries, so as to cause her to be treated as the owner of the trust under section 674(a), and thereby making the trust income taxable to petitioners.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners timely filed joint returns as husband and wife for the taxable years at issue. Petitioners filed an amended return for the taxable year 1982 on April 16, 1984. At the time they filed their petition, petitioners resided in Stockton, California, and had two sons, Jon and Derrick, who were born on May 23, 1960, and June 18, 1964, respectively.

Petitioner, Dr. John M. Carson, was a self-employed dentist during the taxable years at issue. On April 28, 1981, Dr. Carson incorporated his dental practice under the laws of California as John M. Carson, D.D.S., Inc., a California professional corporation. On June 22, 1981, petitioners, as grantors, executed a trust agreement with Jean Carson, as sole trustee, for the benefit of their sons, Jon and Derrick, as beneficiaries. Jean Carson had previously opened a checking account in the name of the trust with the Bank of America in May 1981. The trust was irrevocable for a term of 10 years plus 1 month, and the trust agreement provided that the trust would be "governed by the laws of the State of California."

On June 30, 1981, petitioners, as co-owners, transferred the real property, furnishings, and equipment used in Dr. Carson's dental practice to the trustee. On June 30, 1981, Jean Carson as trustee and Dr. Carson as President of John M. Carson, D.D.S., Inc., executed a lease agreement whereby John M. Carson, D.D.S., Inc., leased the real property from the trust.

The following lease payments were made by John M. Carson, D.D.S., Inc., to the trust:

| Year | Building rent | Equipment lease rent | Total |
|------|--------------|---------------------|-------|
| 1982 | $10,710.00 | $3,650 | $14,360.00 |
| 1983 | 15,328.78 | 4,425 | 19,753.78 |

The trustee received the lease payments and deposited them in the trust's checking account. After depositing the lease payments, the trustee disbursed the trust's net income under the terms of the trust agreement, which stated in part:

### NET INCOME OF TRUST

1. During the term of this Trust, the TRUSTEE shall pay to or apply for the benefit of JON CARSON and DERRICK CARSON, here called "BENEFICIARIES," children of the TRUSTOR, all of the net income of the Trust Estate, in monthly or other convenient installments, in no event less than annually, until they die or this Trust shall terminate, as hereinafter set forth, whichever shall first occur.

In the event that one of the beneficiaries herein shall die during the term of this Trust, then the TRUSTEE shall pay to or apply for the benefit of the issue, if any, of the deceased beneficiary in the same manner and in the same proportion of the net income of the Trust Estate, as would have been done for the benefit of the beneficiary, if he had survived.

In the event that one of the beneficiaries herein shall die during the term of this Trust, leaving no issue, then the TRUSTEE shall pay to or apply for the benefit of the surviving beneficiary all of the net income of the Trust Estate, in monthly or other convenient installments, until said surviving beneficiary shall die or this Trust shall terminate, whichever shall first occur.

### TERMINATION OF TRUST

2. On the death of both of the beneficiaries, if there are no issue of the beneficiaries, or on the expiration of ten (10) years and one (1) month after the date of this declaration, whichever first occurs, this Trust shall terminate and all the Trust Estate then in the hands of the TRUSTEE shall go and be, by the TRUSTEE, transferred, conveyed, and delivered in fee to the TRUSTOR.

The trustee made the following distributions to or on behalf of the beneficiaries pursuant to the trust agreement:

| Trust's FYE March 31 | Jon Carson | Derrick Carson | Total |
|------|-----------|---------------|-------|
| 1982 | $6,414 | $6,413 | $12,827 |
| 1983 | 9,065 | 6,640 | 15,705 |
| 1984 | 4,564 | 9,370 | 13,934 |

Jean Carson, as trustee, filed the trust's fiduciary income tax returns (Form 1041) for the trust's fiscal years ending in 1982, 1983, and 1984. Petitioners did not report any of the trust income as taxable income on their joint returns for the taxable years at issue. In the statutory notice of deficiency respondent determined that all of the trust income was taxable to petitioners.

OPINION

Section 674(a) provides the following general rule:

SEC. 674(a). GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party.

Section 674(a) codifies a line of cases arising out of the Supreme Court's decision in *Helvering v. Clifford,* 309 U.S. 331 (1940). H. Rept. 1337, 83d Cong., 2d Sess., 63-64 (1954); S. Rept. 1622, 83d Cong., 2d Sess., 86-87 (1954). These cases establish, among other things, that if a grantor retains the power to "spray" or "sprinkle" income unevenly between members of a class of beneficiaries he then has the power to dispose of the beneficial enjoyment of the trust income. *Stockstrom v. Commissioner,* 148 F.2d 491, 493-495 (8th Cir. 1945), revg. and affg. in part 3 T.C. 255 (1944). *Commissioner v. Buck,* 120 F.2d 775 (2d Cir. 1941), revg. and affg. in part 41 B.T.A. 99 (1940); *Corning v. Commissioner,* 24 T.C. 907 (1955), affd. per curiam 239 F.2d 646 (6th Cir. 1956). The power to sprinkle income allows the grantor to control the beneficial enjoyment of trust income so that under section 674(a) he then is treated as owning that portion of trust income over which he retained the sprinkling power. Such income thereby becomes taxable to the grantor. *Commissioner v. Buck, supra* at 777-778; *Corning v. Commissioner, supra* at 913; see also sec. 1.674(a)-1(b)(3), Income Tax Regs.

The issue here is whether Jean Carson, as grantor, retained the power to sprinkle trust income between the beneficiaries. (If we find that she retained a sprinkling power, then her co-grantor and spouse, Dr. Carson, will also

be deemed to have retained such a power under section 672(e).)

Petitioners do not argue that any of the statutory exceptions to the general rule of section 674(a) apply here. See secs. 674(b), (c), and (d); see also secs. 1.674(b)-1, 1.674(c)-1, and 1.674(d)-1, Income Tax Regs. Instead, petitioners assert that Jean Carson did not retain a sprinkling power because petitioners as grantors did not intend for her, as trustee, necessarily to equalize income distributions annually, but did so intend for her to do so cumulatively over the entire term of the trust. Alternatively, petitioners assert that the trustee was legally obligated to equalize distributions so any unequal distributions merely constituted misadministration of the trust. See *Bennett v. Commissioner,* 79 T.C. 470 (1982).

In his brief, respondent contends that the unequal distributions in the trust's fiscal years 1983 and 1984 indicate "that Mrs. Carson as grantor and a nonadverse party with respect to Carson, retained the power to sprinkle income among the beneficiaries of [the] trust and that the retention of such power is violative of section 674(a)." We agree with respondent.

Jean Carson testified that "the boys [i.e., her sons] would always tell [her] what amount they needed," and she would then distribute income on the basis of need. The record supports her testimony. As trustee, she made the following income distributions to or on behalf of the beneficiaries:

| Trust's FYE March 31 | Jon Carson | Derrick Carson |
|---|---|---|
| 1982 | $6,414 | $6,413 |
| 1983 | 9,065 | 6,640 |
| 1984 | 4,564 | 9,370 |

While she made roughly equal distributions to or on behalf of her sons in 1982, she distributed income unequally in 1983 and 1984. The unequal distributions indicate that as a grantor she believed that she had retained the power to sprinkle income in those fiscal years.

Petitioners testified that although distributions were unequal in 1983 and 1984, it was their intent as grantors to equalize distributions over the 10-year and 1-month term of the trust. We find their intent, which we note was not

expressed in the trust agreement, to be irrelevant here. Section 674(a) requires the taxation of trust income to grantors when they retain the power to sprinkle income—regardless of whether they choose to exercise such power. *Stockstrom v. Commissioner, supra* at 493-495. To determine the proper period for analyzing whether a grantor retained a sprinkling power, we look to the terms of the trust agreement. These specifically require that all net trust income would be distributed "in no event less than annually."

Petitioners argue in the alternative that although one of the grantors may have exercised a sprinkling power as trustee, she did not legally possess such a power under the trust agreement and therefore she misadministered the trust by making unequal distributions in 1983 and 1984. See *Bennett v. Commissioner, supra* at 486-488. To determine whether the trustee breached her fiduciary duty, we look to the relevant trust provision (paragraph 1, NET INCOME OF TRUST, *supra* at 1136). Petitioners assert that the language "in the same proportion * * * as would have been done for the benefit of the beneficiary" creates an implied duty to equalize distributions. We do not agree. The trust agreement does not specify the beneficiaries' income proportions.

We note that in the critical dispositive language of section 1 of the trust agreement, there is conspicuously absent the word "equal" as a modifier of the "monthly or other convenient installments" of income distribution requirement. Thus, the language in the trust agreement does not limit the trustee's discretion in dividing distributions between the two beneficiaries. Although not expressly granting the trustee full discretionary powers, the only restriction imposed on her by the trust provision is that all net trust income has to be paid to or applied for the benefit of both beneficiaries at least annually.

In *Bennett v. Commissioner, supra* at 487, we held that "The grantor-trustees' misadministration of the trust is not the equivalent of the authority to dispose of the beneficial enjoyment of the trust income [under section 674(a)]." But here, as we have held, the administration of the trust (as regards unequal income distributions) by a grantor-trustee

was consistent with the terms of the trust, so there could have been no misadministration on that score.

Next, we must decide over what "portion" the sprinkling power was retained. Petitioners assert that, if Jean Carson did retain a sprinkling power, she did not retain a sprinkling power over all of the trust income but only over the excess portion of trust income which was actually sprinkled. Petitioners note that the beneficiaries both received $6,640 during 1983, with an excess of $2,425 being paid to Jon. Petitioners further note that during 1984 both beneficiaries received $4,564 with an excess of $4,806 being paid to Derrick. Thus, petitioners contend that because the trustee exceeded making equal distributions by $2,425 and $4,806 in 1983 and 1984, respectively, the trustee retained the power to sprinkle only the $2,425 and $4,806 portions of trust income. Respondent asserts that the trustee retained a sprinkling power over all of the trust income and, as such, all of the trust income should be taxable to petitioners as grantors under section 674(a). We agree with respondent. As we have held, petitioners retained the power to sprinkle all of the trust income, not just the $2,425 and $4,806 excess portions.

There is one final point which we must address. Although we agree with respondent that all of the trust income should be taxable to petitioners, the record does not sustain the amounts of trust income which he asserts were received by the trust. Respondent argues on brief that the trust received $15,458 and $17,305 of rental income during the taxable years 1982 and 1983, respectively.

Respondent arrived at the $15,458 and $17,305 income figures determined in the statutory notice of deficiency as follows:

|  | 1982 | 1983 |
|---|---|---|
| Gross building rent | $14,280 | $14,280 |
| Less: Depreciation | 1,506 | 1,355 |
| Interest expense | 1,696 | - - - |
| Net building rent | 11,078 | 12,925 |
| Equipment lease rent | 4,380 | 4,380 |
| Total income | 15,458 | 17,305 |

However, the parties stipulated for trial that the following amounts were the total amounts of building and equipment rent paid to the trust by John M. Carson, D.D.S., Inc.:

| Year | Building rent | Equipment lease rent | Total |
|------|---------------|----------------------|-------|
| 1982 | $10,710.00 | $3,650 | $14,360.00 |
| 1983 | 15,328.78 | 4,425 | 19,753.78 |

We accept the stipulated figures. However, we note that the stipulated income totals must be reduced by depreciation and interest expenses, which the parties can calculate pursuant to Rule 155.

Because we find that all of the trust income is taxable to petitioners under section 674(a), we do not reach the issue of whether the trustee used trust funds to satisfy the grantors' liabilities so as to cause some portion or all of the trust income to be taxed to them under section 677(b).

To reflect the foregoing,

*Decision will be entered under Rule 155.*